Michael K. O'Neill, SB# 155937
FITZPATRICK, CELLA, HARPER
  & SCINTO
650 Town Center Drive, Suite 1600
Costa Mesa, CA 92626
Telephone: (714) 540-8700
Facsimile: (714) 540-9823
mo'neill@fchs.com
Attorney for Plaintiffs
Astellas Pharma Inc., and
Boehringer Ingelheim Pharmaceuticals Inc.

Robert L. Baechtold (*pro hac vice* to be filed)
Simon D. Roberts (*pro hac vice* to be filed)
FITZPATRICK, CELLA, HARPER
  & SCINTO
30 Rockefeller Plaza
New York, NY 10112-3801
Telephone: (212) 218-2100
Facsimile: (212) 218-2200
rbaechtold@fchs.com
sroberts@fchs.com

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

- - - - - - - - - - - - - - - - - - - - - - - - - - - - X

ASTELLAS PHARMA INC., and BOEHRINGER : Case No. 08-03466 JW
INGELHEIM PHARMACEUTICALS INC. :
                                  :
          Plaintiffs,             :
                                  : PLAINTIFFS' OPPOSITION
     v.                           : TO DEFENDANT'S MOTION
                                  : TO SHORTEN TIME
                                  :
IMPAX LABORATORIES, INC.          :
                                  :
          Defendant.              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - X

PLAINTIFFS' OPPOSITION TO DEFENDANT'S
MOTION TO SHORTEN TIME

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

The patent in suit, U.S. Patent No. 4,703,063 ("the '063 patent"), issued more than 20 years ago, and will expire in October, 2009.  The drug protected by that patent, called "tamsulosin," was approved by the U.S. FDA more than 10 years ago for the treatment of benign prostatic hyperplasia ("BPH").  Since its launch, tamsulosin has become the leading medicament for alleviating that highly prevalent male affliction.

Under the applicable statute, any generic drug company that wanted to seek U.S. FDA approval to sell a generic copy of tamsulosin and concomitantly challenge the '063 patent that protected it, was free to do so as of April, 2001.  21 U.S.C. § 355 (j)(5)(F)(ii).  Impax, however, elected to wait over 7 years and to delay both its challenge to the '063 patent and its application to seek U.S. FDA approval for its product, until (as Impax puts it) "the mere 15 months before the patent expires."  *See* Defendant's Motion to Shorten Time at 2.

Having delayed until the waning months of the patent's term, Impax now complains that its challenge will be mooted unless it obtains a decision before the patent expires, not only from this Court, but from the Court of Appeals as well.  It offers no excuse or extenuating circumstance justifying its lack of diligence -- yet, incredibly, pleads its own dilatoriness as the reason why this Court should depart from its normal schedule and procedures and, despite its heavy case load, reward Impax with priority over other pending cases.

Moreover, in arguing that the '063 patent should be held invalid, Impax seeks to re-litigate a defense that was pleaded, briefed and argued by an earlier, more diligent generic filer (Ranbaxy Pharma) and decided favorably to the patent by Judge Mary Cooper of the District of New Jersey one and half years ago.

"Double patenting" -- the defense Impax asserts -- requires a comparison of the invention claimed in the '063 patent with the invention claimed in the inventors' prior patent, U.S. Patent No. 4,373,106 ("the '106 patent").  Judge Cooper made that analysis and concluded that the inventors had made two distinct and separate inventions: the chemical synthesis process invention claimed in the '106 patent and the invention of compounds useful as medicines and pharmaceutical compositions for administration to patients claimed in '063.  Judge Cooper

1    concluded that, having made two distinct inventions, the inventors were entitled to two patents.

2        As the Court will see from the faces of the '063 and '106 patents [*see* Exhibits 1 & 2], the

3    subject matter of each is complex synthetic and pharmaceutical chemistry.  If this Court is to re-

4    examine and independently re-assess the correctness of Judge Cooper's prior decision, it should

5    have at least the same opportunity she had to understand the science and construe the respective

6    claims. [*See* Exhibit 3].

7        Because -- (i) any time constraints are entirely the product of Impax's lack of diligence,

8    (ii) the subject matter is complex science, (iii) this Court has a heavy docket and (iv) Impax has a

9    low likelihood of success in re-litigating an issue previously decided by a competent judge, there

10   is no legitimate reason why this Court and Plaintiffs should be rushed into an abbreviated

11   schedule to deal with Impax's motion.

12                                    **ARGUMENT**

13       Impax contends that it "stands the risk of severe prejudice" if it does not receive

14   preferential treatment from the Court and that the only relevant issue should be opposing

15   counsel's "availability" to be physically present in San Jose on a day that suits Impax.  Neither

16   assertion is accurate or apt.

17       Every lawsuit involves the risk of "prejudice" to one litigant or the other.  The relevant

18   question is whether prejudice is unfair and is one that is properly cognizable by the Court.  Impax

19   should not be heard to turn its own dilatory conduct into an advantage and an excuse to impose

20   burdens on this Court and on Plaintiffs.  The issue is not simply counsel's "availability," but

21   rather what is a fair and appropriate schedule for the parties to present, and for the Court to

22   decide, a complex chemical case.

23       It is Impax who unfairly attempts to prejudice Plaintiffs by forcing it to prepare and file a

24   hurried opposition brief to Impax's summary judgment motion which involves complex legal and

25   factual issues, without Plaintiffs having the opportunity to take one ounce of discovery -- Impax

26   is still to provide Plaintiffs with even its initial disclosures.  Even though prejudice to Plaintiffs is

27   apparent, Plaintiffs have no burden to show that it will suffer any harm or prejudice to

28   successfully oppose Impax's present motion.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S
MOTION TO SHORTEN TIME          - 2 -

1    **I.    History Shows that Impax Has Not Suffered Unfair Prejudice**

2         The dates that are relevant to Impax's motion to shorten time are set forth in the attached

3    Declaration of Todd Nosher in Support of Plaintiffs' Opposition to Shorten Time.

4         This history demonstrates that Impax did nothing in 2001 when it could have challenged

5    the '063 patent, did nothing while Ranbaxy was litigating the double patenting issue and did

6    nothing in February, 2007 to test whether Judge Cooper had incorrectly decided that issue.

7         If Impax is now suffering pain, it is the pain of sitting on its own hands for so long.  In

8    light of this history of seven years of continuous inaction, it is incredible that Impax now asserts

9    that "delay is [Plaintiffs'] primary objective" and it was a "strategy of delay," and "baseless" and

10    "groundless" that (i) Plaintiffs took slightly more than one month (within the term prescribed by

11    statute) to review Impax's belated notice letter and decide where to bring suit; and (ii) were

12    unable (because of a prior business commitment) to accommodate Impax's demand to meet and

13    confer on 24-hour notice.  *See* Defendant's Motion to Shorten Time at 2.

14    **II.    Impax's Motion Is Neither Simple Nor A "Pure Question Of Law"**

15         Deciding an issue of obviousness-type double patenting is not simply an exercise in

16    looking at the words of one patent claim and seeing if the same words appear in another patent

17    claim.  As Judge Giles Rich explained in his encyclopedic explication in *General Foods Corp. v.*

18    *Studiengesellschaft Kohle* (972 F.2d 1272, 23 USPQ2d 1839 (Fed. Cir. 1992)), the prior claims

19    are not "prior art," and cannot be used as if they were a prior disclosure.  Rather, the Court must

20    evaluate, and then compare, what was the <u>invention</u> claimed in the prior patent and the <u>invention</u>

21    claimed in the later one.  *Id* at 1277-79.

22         The invention of the '106 patent is synthetic process based on a series of defined reactants

23    and steps.  The invention of the '063 patent is chemical compounds and pharmaceutical

24    compositions useful to treat patients.  To understand what those disparate inventions are, the

25    Court must understand both the underlying science and the nature, scope and meaning of the

26    claims of each patent.  That is a comparison of substance, not merely words.

27         To do that analysis, the Court must understand the science.  Impax's submissions offer

28    this Court no help on that and -- to boot, proffer evidence that cannot be justified on the asserted

PLAINTIFFS' OPPOSITION TO DEFENDANT'S
MOTION TO SHORTEN TIME                    - 3 -

1  principles of collateral estoppel or admissions by an adversary.

2      If Judge Cooper's opinion gives rise to collateral estoppel at all (which is questionable

3  because it was vacated), it could only be for issues that were actually litigated and were essential

4  to the decision.[1]  That would be determined by reading the decision itself, not the submissions of

5  the *Ranbaxy* litigants, which Impax asks the Court to accept through "judicial notice."

6      Moreover, it is incorrect for Impax to seek to have this Court accept here Ranbaxy's

7  briefs and the opinions of Ranbaxy's experts.  That request cannot be justified either as a

8  consequence of collateral estoppel or as admissions of the Plaintiffs here.  One especially

9  egregious example is that Impax's brief asserts, as pure *ipse dixit*, that the process steps of the

10  '106 patent were not novel and were obvious (*see* Defendant's Motion for Summary Judgment,

11  at 4), without a shred of factual or expert evidence to support that assertion.  As an issued patent,

12  the '106 patent enjoys a presumption that its claimed subject matter in both novel and non-

13  obvious -- a presumption that can be overcome only by evidence that is clear and convincing, not

14  by naked assertions of counsel (35 U.S.C. §282, *Bausch & Lomb v. Barnes-Hind/Hydrocurve,*

15  *Inc.*, 796 F.2d 443, 446 (Fed. Cir. 1986)), and it is not a conclusion that the Court can, or should,

16  determine as a "pure question of law" (*see* Defendant's Motion for Summary Judgment at 2).

17      Finally, Impax asserts that Plaintiffs should be able to decide now which of the patent

18  claims they will assert in this case, based on which ones they asserted in *Ranbaxy*.  That ignores

19  that Plaintiffs had full discovery of the composition of Ranbaxy's product and the process used to

20  produce it.  When comparable discovery is conducted here, Plaintiffs will make a similarly

21  informed judgment of what claims to assert at that time.

22  **III.  <u>Impax's Generic Applicant Status Does Not Justify Special Privileges</u>**

23      In mid-2008, Impax filed an abbreviated new drug application ("ANDA") seeking

24  approval from the U.S. FDA to sell a generic copy of tamsulosin.  Apart from freeing itself from

25  the constraints of patent infringement, Impax is required to prove to the U.S. FDA that its

26

27      [1]Impax must agree because cases cited in Defendant's Motions for Summary Judgment
and to Shorten Time stand for this proposition.  *See, e.g., Pfaff v. Wells Elecs., Inc.*, 5 F.3d 514,

28  517-518 (Fed. Cir. 1993); *Hydranautics v. FilmTec Corp.*, 204 F.3d 880, 885-887 (9th Cir. 2000).

1  proposed product meets the agency's requirements for purity and manufacturing standards, and

2  produces the same effect in patients (i.e. is "bio-equivalent" to) Plaintiffs' innovator product.

3  Unless and until Impax satisfies U.S. FDA's technical requirements, it cannot get U.S. FDA

4  approval -- thus cannot sell its product, and it remains a moot question whether it would also be a

5  patent infringer, if it sells that product.

6       Impax does not currently have U.S. FDA technical approval, and the median time to

7  obtain that approval for a generic copycat product is about 17 months.[2]  Impax's U.S. FDA

8  review process has just started.  Whether or when it will ever be in a position to obtain that

9  approval will be a subject of discovery in this case.  Absent that approval, the patent issues

10  remain premature, and may be entirely moot.

11       Finally, Impax's attempts to assume the mantle of a necessary provider to the public of

12  generic tamsulosin (see Defendants' Motion to Shorten Time at 5) are misplaced.  As of today, at

13  least three prior generic ANDA filers have "tentative approval," i.e. they have established what

14  Impax has not -- the ability to meet U.S. FDA's technical requirements of safety, efficacy and

15  assurances of quality and bio-equivalence.[3]

## CONCLUSION

17       If an appellate decision on Impax's summary judgment motion does not occur before the

18  '063 patent expires, that is solely Impax's fault.  Neither this Court nor Plaintiffs should be

19  required to take extraordinary measures to make up for Impax's dilatoriness.  To decide a second

20  time the issue of obviousness-type double patenting that Judge Cooper has already found

21  baseless, this Court will need a full record and adequate time to review it.

---

26     [2]  See http://www.oig.hhs.gov/oei/reports/oei-04-07-00280.pdf, at 6.

27     [3]  A search at the FDA website http://www.accessdata.fda.gov/scripts/cder/drugsatfda/ for

28  "tamsulosin hydrochloride" yields three ANDAs with tentative approval.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Dated: August 4, 2008

By:    /s/   Michael K. O'Neill

Michael K. O'Neill
FITZPATRICK, CELLA, HARPER
 & SCINTO
650 Town Center Drive, Suite 1600
Costa Mesa, CA 92626
Telephone: (714) 540-8700
Facsimile: (714) 540-9823
mo'neill@fchs.com
Attorney for Plaintiffs
Astellas Pharma Inc., and
Boehringer Ingelheim Pharmaceuticals Inc.


Robert L. Baechtold
Simon D. Roberts
FITZPATRICK, CELLA, HARPER
 & SCINTO
30 Rockefeller Plaza
New York, NY 10112-3801
Phone: (212) 218-2100
Facsimile: (212) 218-2200
rbaechtold@fchs.com
sroberts@fchs.com